ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    FAX: (415) 436-7234
    Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:24-CR-00438 JD |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| DELVER ANTONIO SANDREZ-CRUZ, | Date:    December 16, 2024 |
| Defendant. | Time:    10:30 a.m.<br>Court:  Hon. James Donato |

**INTRODUCTION**

Defendant Delver Sandrez-Cruz was arrested on May 30, 2024, by SFPD for selling fentanyl in the Tenderloin neighborhood of San Francisco. His case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin neighborhood through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history or was in possession of smaller amounts of fentanyl, leading the United States to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug

UNITED STATES' SENTENCING MEMORANDUM
3:24-CR-00438 JD                1

trafficking.

So far, as a direct result of the combined efforts of state and federal law enforcement, approximately 130 people have been successfully prosecuted federally, the majority receiving time served sentences. Very few have returned to the United States and the handful who did have been apprehended, held in custody, and are subject to new prosecutions with prison time for illegal reentry in violation of 8 U.S.C. § 1326, as well as for violating the terms of their supervised release.

In this case, the United States, the Probation Office, and Sandrez-Cruz all urge the Court to impose a time served plus one court day sentence followed by a three-year term of Supervised Release that includes a suspicionless search condition and a stay away order from the Tenderloin. By the time of the sentencing hearing on December 16, 2024, Sandrez-Cruz will have been in custody for approximately six and one-half months. This case is Sandrez-Cruz's first offense, he is very young, and he will almost certainly be deported from the United States. The record demonstrates that this disposition is an effective way to free the community from the scourge of fentanyl dealers.

**STATEMENT OF FACTS**

The parties agree on the facts of this case, and they are set forth both in Plea Agreement in paragraph 2, and in the PSR in paragraphs 5-11. In short, the salient facts are as follows:

On or about May 30, 2024, in the Northern District of California, and more specifically in the Tenderloin District of San Francisco in the vicinity of the intersection of Hyde Street and Ellis Street, Sandrez-Cruz was selling drugs in the Tenderloin. At that time, Sandrez-Cruz sold a portion of the fentanyl he possessed to an undercover police officer. He was wearing a black hoodie and black pants, sitting on the front steps of a building underneath scaffolding on the west-side of Hyde Street, between Sutter and Bush Streets. The SFPD arrest team located Sandrez-Cruz and took him into custody. When he was searched incident-to-arrest, SFPD found $326 dollars of U.S. currency in various denominations along with the one $20 dollar bill of marked city funds from sale to the police officer in Sandrez-Cruz's right front-pants pocket. He also possessed numerous plastic baggies commonly used in the packaging of narcotics.

UNITED STATES' SENTENCING MEMORANDUM
3:24-CR-00438 JD                                                    2

Sandrez-Cruz admitted in his Plea Agreement that he possessed with the intent to distribute the following controlled substances (all gross weight including packaging):

- 64.2 grams of fentanyl;

- 27.4 grams of cocaine base;

- 204.1 grams of a mixture or substance containing methamphetamine; and

- 4.0 grams of heroin.

*See* Plea Agreement ¶ 2. He also admitted that the "controlled substances that I possessed on May 30, 2024, have a combined converted drug weight of more than 400 kilograms but not more than 700 kilograms under Section 2D1.1 of the U.S. Sentencing Guidelines."[1] *Id.* He further admitted that "I am not a citizen or national of the United States and that I am a citizen of Honduras. I further admit that I entered this country illegally without inspection and have no legal status in the United States." *Id.*

On July 12, 2024, a criminal complaint issued charging Sandrez-Cruz with possession with the intent to distribute fentanyl. On August 1, 2024, an Information was filed charging Sandrez-Cruz with one count of possession with the intent to distribute fentanyl. On September 9, 2024, Sandrez-Cruz entered his unconditional guilty plea pursuant to a B Plea Agreement to the one count charged – possession with the intent to distribute fentanyl.

Sentencing is set for December 16, 2024. The United States' Sentencing Memorandum is therefore timely filed pursuant to Local Rule 32-5(b).

//

---

[1] In another black plastic bag, Officers found 4.0 gross grams of suspected heroin that was not tested. Additionally, there was a bag of suspected fentanyl pills (56.5 gross grams), commonly known as M30's and 29.3 gross grams of suspected fentanyl which both tested as acetaminophen. For sentencing purposes, the total amount of the converted drug weight is between 400 to 700 kilos consisting of two mixtures of separately bagged fentanyl weighing 64.2 gram; cocaine base (calculated as cocaine HCL per the Attorney General's guidance) totaling 27.4 grams; and methamphetamine (204.1 grams) and heroin (4 grams) as reported, with all weights being gross weights. To the extent that some of the fentanyl was preliminarily noted to be acetaminophen, it does not change this stipulation between the parties.

UNITED STATES' SENTENCING MEMORANDUM
3:24-CR-00438 JD                                            3

## APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The parties agree that the United States Sentencing Guidelines should be calculated as follows:

a.  Base Offense Level, U.S.S.G. §2D1.1(a)(5)(c)(8):                    26
Drug quantity:  Based on converted drug weight of all controlled substances possessed on May 30, 2024, more than 400 kgs but less than 700 kgs.[2]

b.  Zero Point Offender Adjustment: U.S.S.G. § 4C1.1                  -2

c.  Acceptance of Responsibility:                                     - 3
If he meets the requirements of U.S.S.G. § 3E1.1, he is entitled to a three-level reduction.

d.  Adjusted Offense Level:                                          21

The parties further agree that, based on a Criminal History Category I, Sandrez-Cruz's Guidelines range is 37-46 months.

## SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the United States requests a sentence of time served plus one day, and a three-year term of supervised release that includes the special condition that Sandrez-Cruz must stay away from the Tenderloin during the period of supervised release.  This stay-away condition is a critical component of the Plea Agreement because it prevents Sandrez-Cruz from returning to the Tenderloin, the area from which Sandrez-Cruz's conviction for drug trafficking arises. Finally, the recommendation is not greater than necessary to achieve the goals the Court is required to consider when imposing a sentence under Section 3553 of Title 18 of the United States Code.

---

[2] The converted drug weight table that was part of the Plea Agreement in Appendix A is below:

| Substance | Amount Possessed[1] | Conversion | Converted Drug Weight |
|---|---|---|---|
| Heroin | 4.0 grams | 1 gram = 1 kilogram | 4 kilograms |
| Methamphetamine | 204.1 grams | 1 gram = 2 kilograms | 408.2 kilograms |
| Cocaine base*(calculated as HCL) | 27.4 grams | 1 gram = 200 grams | 6.05 kilograms |
| Fentanyl | 64.2 grams | 1 gram = 2.5 kilograms | 160.5 kilograms |
| **Total** | - | - | **578.75 kilograms** |

UNITED STATES' SENTENCING MEMORANDUM
3:24-CR-00438 JD                                4

I.      **Section 3553 factors**

      A.      **Nature and circumstances of the offense and history and characteristics of the defendant**

Sandrez-Cruz will be 19 this month.  He admits that he is "not a citizen or national of the United States" and that he is "a citizen of Honduras."  He also admits that he "entered this country illegally without inspection" and that he has no legal status in the United States. This conviction "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States."  Plea Agreement ¶ 1.

For his part, Sandrez-Cruz claims that when he entered the United States in 2023 it was because he had been promised a legitimate job.  In the Presentence investigation Report ("PSR"), on the second page of the Probation Office's sentencing recommendation, the Probation Office summarizes Sandrez-Cruz' history as follows:

> At 17 years old, the defendant traveled alone to the United States because he was promised he would be able to work a legitimate job. He described a tough trip to the United States and had to walk through the desert for over a week before he arrived. After arriving in Atlanta, Georgia, he was told by an individual that he did not have a job for Mr. Sandrez-Cruz. Instead, they traveled to California, where the defendant was told he needed to sell drugs on the streets of San Francisco.

PSR at Sentencing Recommendation p. 2.

Sandrez-Cruz has several mitigating facts in his history.  As noted by the Probation Office:

> The court can also consider Mr. Sandrez-Cruz's very young age, the fact he grew up in poverty, started working as a young child, the trauma he endured during his immigration to the United States, and his lack of criminal history. Additionally, at the time of sentencing, he will have been in custody approximately six and a half months.

PSR at Sentencing Recommendation p. 2.  All these factors suggest that a shorter sentence of incarceration is appropriate in this case.

      B.      **Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant**

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, remains in crisis, especially at night.  As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like

UNITED STATES' SENTENCING MEMORANDUM
3:24-CR-00438 JD                                                                5

fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. While the combined state and federal law enforcement efforts are making a difference, there is still work to be done. The Tenderloin drug market not only creates suffering for its participants but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Sandrez-Cruz has no prior convictions. The proposed sentence – of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction – is a significant downward variance from the Guidelines range. But it is one that the government submits is appropriate given Sandrez-Cruz's conduct, his status as a street-level dealer, the unique problems the Tenderloin faces, and the need for deterrence and protection of the public. Notably, for Sandrez-Cruz to receive this plea offer, Sandrez-Cruz waived detention and has been detained since his arrest; the government offered to recommend a time-served sentence in exchange for his agreement to promptly plead guilty. While there had been talk about a trial, Sandrez-Cruz waived that right and instead pleaded guilty and stayed in custody.

While the government does not know much about him beyond what is in the PSR, Sandrez-Cruz was a street level dealer who was not, as many are, arrested and then released and then rearrested, at least not since he was an adult. This is his only adult arrest and conviction, and he will likely be removed from the United Staters and ordered not return.

While the Court could give Sandrez-Cruz more prison time, the government does not believe it is necessary in this case. The arrest, detention, prompt guilty plea and factual admissions combined with the three years of supervision, the stay away order coupled with almost certain deportation, are sufficient general and individualized deterrence in this case. Sandrez-Cruz is on notice that if he returns to the United States without permission or to the Tenderloin (in violation of his supervised release terms) he will invite new charges in addition to supervised release violations. If Sandrez-Cruz violates his stay-away order and is apprehended, he will surely face a significant sentencing recommendation from the government and a significant sentence from this Court for having violated the terms of his supervised release.

UNITED STATES' SENTENCING MEMORANDUM
3:24-CR-00438 JD                                6

## II.      The necessity of the proposed supervised release special conditions

A three-year term of supervised release is required by statute for the drug-trafficking offense to which Sandrez-Cruz pleaded guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition.  In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to impose a strict stay-away from the Tenderloin for three years.  Under the terms of supervised release as contemplated herein, not only will Sandrez-Cruz be prohibited from engaging in any further unlawful conduct, but Sandrez-Cruz will be prohibited from entering the Tenderloin without prior approval by the Probation Office:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained.

The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where courts in this District have encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-CR-00002 CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553 CRB.

## CONCLUSION

The United States joins with the Probation Office and Sandrez-Cruz in recommending a time served plus one court day sentence. While not as forceful a sentence as this Court many times seeks for drug dealers in the Tenderloin, the United States believes it to be fair and just and not harsher than necessary to accomplish all the sentencing objectives under the 3553a factors.  Sandrez-Cruz seems to

UNITED STATES' SENTENCING MEMORANDUM
3:24-CR-00438 JD                                                    7

be doing what he can to make amends for his bad decision to come into this country illegally in the first instance, and then to sell drugs instead of saying no or seeking help from the authorities.  Hopefully, he will find a productive path when he returns home.  A longer prison sentence for him is harsher than needed under the specific circumstances in this case.

For all of these reasons, the government recommends that the Court sentence Delver Sandrez-Cruz to a sentence of time served plus one day, with a release order assuring that Sandrez-Cruz will be released from Santa Rita to United States Marshal Service custody and then released from 450 Golden Avenue on the last day of his custodial sentence, to be followed by a term of supervised release of three years with the special conditions agreed to by the parties in the contemplated Plea Agreement, including the stay-away condition.

DATED:  December 2, 2024

Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney

 /s/ Jeffrey Bornstein
JEFFREY BORNSTEIN
Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM
3:24-CR-00438 JD                                8